*747 OPINION OF THE COURT
Vincent W. Versaci, S.
The petitioner, Trasteo Bank, formerly known as Trasteo Bank New York (hereinafter Trasteo Bank), commenced this cy pres proceeding pursuant to EPTL 8-1.1 (c) to determine whether St. Clare’s Hospital’s relinquishment of its license to operate as a hospital renders the administration of the subject charitable trusts according to their literal terms impractical or impossible. Subsequently, the respondent, St. Clare’s Hospital of Schenectady, NY Foundation, Inc. (hereinafter St. Clare’s), moved this court by order to show cause dated June 14, 2011, seeking an order rejecting the notice of appearance filed by Ellis Hospital and Ellis Hospital Foundation, Inc. (hereinafter Ellis) in the underlying cy pres proceeding. Specifically, St. Clare’s asks this court to determine that Ellis has no standing to participate in this matter; to set a discovery schedule herein; and to award St. Clare’s its costs and attorneys’ fees in connection with this motion.
The Attorney General has filed papers in support of St. Clare’s motion. Ellis has filed papers in opposition and Trasteo Bank had declined to file any papers as it is not taking a position. The court has considered all of the papers filed herein, as well as the oral arguments presented by counsel on July 14, 2011.
Facts
This case presents a unique set of facts. As trustee of the trusts that are the subject of this proceeding, Trasteo Bank has petitioned this court for cy pres relief pursuant to EPTL 8-1.1 (c) (1) and “requests direction regarding the payment of the portion of the trust remainder interests” of the respective trusts that have heretofore been designated for St. Clare’s “in a manner which would most effectively accomplish the trusts’ general purposes.” (Petition, para Twenty-First.) Specifically, the trust agreement designates “St. Clare’s Hospital of Schenectady, New York Foundation Inc. Schenectady, New York,” along with various other charitable beneficiaries, to receive a portion of the remainder of the subject trusts. (See Trust Agreement art IX [b] [13]; art X [a], § 10.2 [b] [13].)
The petitioner alleges that “[o]n or about June 16, 2008, pursuant to a New York State hospital consolidation mandate (The ‘Berger’ Commission Report-Implementation), St. Clare’s Hospital of Schenectady relinquished its license to operate as a hospital and ceased to be operational.” (Petition, para Seventeenth.) The petitioner further alleges that
*748 “[u]pon information and belief, St. Clare’s Hospital of Schenectady, NY Foundation, Inc., ... a not-for-profit corporation established in 1981 to support and assist St. Clare’s Hospital of Schenectady in expanding and developing its services to the community, . . . remains in existence as a not-for-profit corporation holding significant assets; however, it no longer supports or assists the inoperative St. Clare’s Hospital of Schenectady.” (Petition, paras Sixteenth, Eighteenth.)
The petitioner requests the court to exercise its cy pres power given the “changed circumstances [that] have rendered the administration of [the] charitable trust according to its literal terms either ‘impracticable or impossible,’ [and] to reform the trust in a manner that ‘will most effectively accomplish its general purposes.’ ” (Petition, para Twentieth.)
The petition did not list Ellis as an interested party. However, subsequent to the filing of the petition, Ellis filed a notice of appearance dated May 20, 2011, thereby claiming an interest in this proceeding. St. Clare’s filed a verified answer to the petition and simultaneously therewith, filed the instant motion seeking to strike Ellis’ notice of appearance.
The Instant Motion
St. Clare’s argues in support of its motion that Ellis does not have a cognizable legal stake in this cy pres proceeding sufficient to confer upon it standing as a party. St. Clare’s argues that at best, Ellis is merely a potential beneficiary, and the courts in New York have held that a potential beneficiary does not have standing to enforce or challenge the disposition of charitable gifts, citing Alco Gravure, Inc. v Knapp Found. (64 NY2d 458 [1985]) and Matter of May (213 AD2d 838 [1995]). St. Clare’s requests that Ellis be precluded from appearing in this proceeding since Ellis lacks a preferred status among the unlimited and undefined class of hundreds of charities that are possible beneficiaries of the subject trusts.
In support of St. Clare’s motion, the Attorney General argues that his office has sole standing to represent potential beneficiaries of charitable gifts in cy pres proceedings. The Attorney General further argues that the test articulated by the Court of Appeals in Aleo Gravure (supra), does not apply here because the court has yet to determine whether it is even necessary to exercise its cy pres power over the trust agreement. However, if the court were to find that the Aleo Gravure test does apply to *749 the facts of this case, the Attorney General submits that Ellis does not fall within the exception to the general rule of standing as enunciated therein, because Ellis has neither a special interest nor a preference in the subject gift superior to that of any other charitable organization.
In opposition to St. Clare’s motion, Ellis argues that the court need not reach the issue of standing because Ellis has neither initiated this cy pres proceeding nor is suing to enforce its claim to the subject charitable gift. Rather, the court should simply permit Ellis to appear in this proceeding as an interested party in light of Ellis’ acquisition of St. Clare’s Hospital’s assets and assumption of its hospital services pursuant to the Berger Commission’s mandate.
Specifically, and as detailed in the affidavit of Cristine Cioffi, Chair of the Board of Trustees of Ellis Medicine, sworn to on July 5, 2011, the Berger Commission required St. Clare’s Hospital to surrender its license to operate as a hospital, and to execute an asset transfer agreement with Ellis, which became effective on June 16, 2008. Pursuant to this Agreement, Ellis assumed the sole responsibility of providing hospital and other health care services previously provided by St. Clare’s Hospital, and has become the sole remaining hospital in Schenectady County.
Ellis argues that given its unique relationship with St. Clare’s, and the fact that it possesses documents, witnesses and other evidence that are directly relevant to the issues in this proceeding, it should be permitted to appear and participate in this matter, or in other words, be permitted to intervene pursuant to CPLR 1012 or 1013. Ellis further argues that if the court does reach the issue of standing, the exception to the general rule of standing carved out by Aleo Gravure applies to Ellis given its contractual relationship with St. Clare’s Hospital. Ellis contends that since it is unique among all other potential beneficiaries and is a sharply defined potential beneficiary consisting of two entities, namely, a single hospital and its supporting foundation, Ellis falls within the Aleo Gravure exception and thus has standing in this matter.
Ruling
The court will first address the argument advanced by the Attorney General that the issue of Ellis’ standing, or that of any potential beneficiary is premature at this point in the proceeding, and that the Aleo Gravure test does not even apply until the court first decides that it is necessary to exercise its cy pres *750 power over the trust agreement. This argument suggests that no potential beneficiary has any standing unless and until the court decides it must exercise its cy pres power, and that the rights of any potential beneficiaries to the subject gift are not triggered until such time as the court determines that it is impossible or impracticable for the subject charitable disposition to be given to St. Clare’s.
Not only does the Attorney General cite to no authority to support this argument, but this argument is fundamentally flawed. If the court were to apply this argument to its logical conclusion, then the Attorney General himself, who is the statutory representative of potential charitable beneficiaries pursuant to EPTL 8-1.1 (f), would not even have standing at this point in the proceeding. Clearly, this is not the result the Attorney General wishes the court to reach and the court declines to set such a precedent.
In fact, the court has carefully parsed the language of EPTL 8-1.1, the decisions of the Court of Appeals and the Appellate Division in Aleo Gravure and Matter of May respectively, and there appears to be no authority for the proposition that the court must first decide whether cy pres applies before reaching the issue of standing and then finally to determine how and to whom the charitable disposition should be administered. If a potential beneficiary falls under the exception to the Aleo Gravure rule and is found to have standing with regard to the latter issue of how and to whom the charitable disposition should be administered, the court fails to see why that same potential beneficiary should not have the same standing with regard to the former issue of whether the court should apply cy pres. That potential beneficiary has just as much of a tangible stake in the court’s determination of whether to apply its cy pres power as it has in the court’s determination of how to apply that power.
Moreover, the issue of standing and who has the right to appear and participate as a party in interest in any given case is commonly addressed at the outset of the litigation, before the court reaches any of the merits of the case. The rationale for this approach is to protect the interests of all parties, to avoid prejudice, the potentiality for duplicative litigation and/or inconsistent judgments and judicial economy. This approach is all the more appropriate in cy pres proceedings, where the issues of whether to apply cy pres and how to apply it are interrelated.
To illustrate this point, consider the question of the decedent’s donative intent. The court will need to decide this question *751 before deciding whether to apply cy pres, and that determination will become the law of the case. If the court decides to apply cy pres, the decedent’s donative intent will also be relevant to a determination of how to apply cy pres. The potential for duplicative litigation and/or prejudice to a party who was not part of these proceedings until after these issues were decided is self-evident.
Thus, based on the foregoing, the court finds that the issue of standing is not premature, and is now ripe for the court’s review at this point in the proceeding. In the interests of judicial economy and for the benefit of the parties, the court will determine the issue of Ellis’ standing before deciding whether or not the court should exercise its cy pres power.
The court will next address Ellis’ argument that the court need not reach the issue of standing because Ellis neither initiated this proceeding nor is suing to enforce its claim to the subject charitable gift. Rather, Ellis is simply appearing as an interested party, and instead of deciding whether Ellis has standing, the court should just allow Ellis to intervene pursuant to CPLR 1012 or 1013.
Whether a party is found to have standing, or whether a party is granted intervenor status, is a distinction without a difference. To allow a party to appear and participate in a proceeding, or to grant a party intervenor status, is the equivalent of conferring standing on that party. An intervenor generally “acquires the same status as that of an original party, including the right to participate in discovery, make dispositive motions, assert additional claims and so forth.” (Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C1012.-1, at 154, citing New York Cent. R. R. Co. v Lefkowitz, 19 AD2d 548 [1963].) Further proof that a party granted intervenor status equates to a party with standing is found in CPLR 1014, which requires that “[a] motion to intervene shall be accompanied by a proposed pleading setting forth the claim or defense for which intervention is sought.”
The fact that Ellis did not initiate this proceeding or sue to enforce its claim does not remove the issue of its standing to appear and participate as a party in interest. There is no question that Ellis did not have standing to commence this cy pres proceeding. EPTL 8-1.1 (c) (1) states that only “the trustee or . . . the person having custody of the property subject to the disposition” may apply to the court for cy pres relief. Ellis is not the named trustee, nor is Ellis in possession of the subject dis *752 position. However, whether a party commences a proceeding, asserts a claim or defense, files a notice of appearance, or moves to intervene, the fundamental question of “standing” prevails regardless of which procedural vehicle the party chooses to use.
In this proceeding, Ellis chose to file a notice of appearance because it was not named as an interested party in the underlying petition, and decided to unilaterally insert itself into this proceeding as if it were a named party with standing to appear. The proper course of action would have been to file a motion to intervene as required by CPLR, 1012 and 1013, which Ellis did not do. St. Clare’s moved, in response, to strike Ellis’ notice of appearance for lack of standing. In its response to St. Clare’s motion, Ellis seeks intervenor status as an alternative remedy. Thus, the issue of Ellis’ standing to appear and participate in this proceeding as a party in interest has been properly raised before the court for an early adjudication and will be decided at this time.
Aleo Gravure and its Application to this Case
All of the parties agree that if the court decides to reach the issue of Ellis’ standing, which the court has now determined it will, then the court should apply the standing rule as enunciated by the Court of Appeals in Aleo Gravure. Aleo Gravure was a declaratory judgment action brought by corporate plaintiffs pursuant to the Not-For-Profit Corporation Law, whose employees were the intended beneficiaries of a charitable foundation. The issue of the plaintiffs’ standing to maintain the action was raised by the defendant’s motion to dismiss the complaint.
Clearly, the facts in Aleo Gravure differ from the facts of the case at bar. First, Aleo Gravure was not a cy pres proceeding pursuant to EPTL 8-1.1. Next, the plaintiffs in Aleo Gravure were members of a named class of beneficiaries, namely, persons employed by the defendant corporation. Lastly, the issue in Aleo Gravure pertained to the plaintiffs’ standing to sue, not standing to appear and participate as an intervenor as in this case. Despite these factual distinctions, and finding no case or other authority providing any superior guidance to assist the court in deciding the issue of Ellis’ standing in this case of first impression, the court will apply the general rule of standing and the exception thereto as articulated in AZco Gravure.
The Aleo Gravure Court held as follows:
“The general rule is that one who is merely a possible beneficiary of a charitable trust, or a member of a class of possible beneficiaries, is not entitled to *753 sue for enforcement of the trust . . . Instead, the Attorney-General has the statutory power and duty to represent the beneficiaries of any disposition for charitable purposes.
“There is an exception to the general rule, however, when a particular group of people has a special interest in funds held for a charitable purpose, as when they are entitled to a preference in the distribution of such funds and the class of potential beneficiaries is sharply defined and limited in number.”
(Alco Gravure at 465 [citations omitted].)
After carefully reviewing the undisputed facts regarding the Berger Commission’s mandate and the asset transfer agreement between St. Clare’s and Ellis required thereunder, whereby Ellis acquired St. Clare’s Hospital’s assets and assumed its hospital services, the court finds that Ellis does have a unique, contractual relationship with St. Clare’s that sets it apart from all other potential charitable beneficiaries and is therefore entitled to a preference in the distribution of the subject charitable disposition. Ellis is a sharply defined potential beneficiary, and thus falls under the exception to the general rule under Aleo Gravure, giving Ellis standing to appear in this matter.
The court emphasizes, however, that this ruling should not be interpreted as meaning that in the event the court determines that it must exercise its cy pres power, Ellis will be the likely recipient of the subject charitable disposition. Simply put, the court’s ruling on the issue of standing is an acknowledgment that the Berger Commission’s mandate created a unique, contractual relationship between Ellis and St. Clare’s. Based on these undisputed facts, Ellis clearly has a substantial interest in, and could be adversely affected by the court’s determination of whether to exercise its cy pres power, and if so, how it should exercise that power. Thus, giving Ellis standing to appear does not only give it a voice to protect those interests but will expedite the court’s adjudication of those interests because of Ellis’ intimate familiarity with the events that led to St. Clare’s ceasing its operation as a hospital. {See St. Joseph’s Hosp. Health Ctr. v Department of Health of State of N.Y., 224 AD2d 1008 [1996]; Plantech Hous. v Conlan, 74 AD2d 920 [1980], appeal dismissed 51 NY2d 862 [1980]; United Servs. Auto. Assn. v Graham, 21 AD2d 657 [1964].)
Given the ties that now bind St. Clare’s to Ellis, this case is uniquely different and distinguishable from the facts in Matter *754 of May (supra). In that matter, the Third Department found that “[i]n the context of [that] case,” the Roman Catholic Diocese of Albany, New York was not entitled to intervene and lacked standing because it did not fall under the Aleo Gravure exception. {May at 840.) May was decided in the context of an accounting proceeding, where the will left the rest, residue and remainder of the estate “to unnamed charitable beneficiaries to be selected by [the Executor] ... in his sole discretion.” {Id. at 838.) The Court held that the Attorney General was the sole representative under EPTL 8-1.1 (f) of the limitless class of unnamed potential beneficiaries whose rights were unknown. {Id. at 840.)
Unlike in May, where there were no named residual charitable beneficiaries, here there is a named beneficiary, St. Clare’s. Ellis has acquired St. Clare’s Hospital’s assets and has assumed its hospital services pursuant to the Berger Commission’s mandate and the asset transfer agreement required thereunder. These facts make the general rule that the Attorney General has sole standing to represent potential beneficiaries of charitable gifts inapplicable to Ellis, and give Ellis standing to appear in this matter under the Aleo Gravure exception.
The court feels compelled to reiterate that its ruling that Ellis has standing in this matter is not intended to abrogate the limitation contained in EPTL 8-1.1 (c) (1) as to who can initiate a cy pres proceeding. Ellis continues to lack standing to commence a cy pres proceeding unless it is the named trustee or is in possession of the subject disposition. (EPTL 8-1.1 [c] [1].) Ellis only has standing to appear and participate in the proceeding as an interested party, with the right to file a responsive pleading, participate in discovery, make motions, and participate during the trial as if Ellis were originally listed as an interested party/respondent in the petition.
This ruling is akin to a finding that Ellis should be allowed to intervene, and had Ellis made such a motion, that motion would have been granted under CPLR 1013. CPLR 1013 provides in pertinent part as follows:
“§ 1013. Intervention by permission
“Upon timely motion, any person may be permitted to intervene in any action . . . when the person’s claim or defense and the main action have a common question of law or fact. In exercising its discretion, the court shall consider whether the intervention will unduly delay the determination of the *755 action or prejudice the substantial rights of any party.”
The court finds that Ellis has a “claim or defense [having] a common question of law or fact” to the relief sought in the petition because of the affinity created by the Berger Commission’s mandate. The court, in exercising its discretion, further finds that since this proceeding is still in its infancy, allowing Ellis to appear and participate will not “unduly delay the determination of the action or prejudice the substantial rights of any party.” (See CPLR 1013; see also Matter of Norstar Apts. v Town of Clay, 112 AD2d 750 [1985].) To the contrary, the court opines that Ellis’ involvement will expedite the final resolution of this matter.
Accordingly, based on all of the foregoing, St. Clare’s motion is hereby denied, and Ellis’ notice of appearance is allowed to stand. In the alternative, the court searches the record and grants intervenor status to Ellis under CPLR 1013, the permissive intervention statute, conferring upon Ellis standing to appear and participate in this proceeding with the same rights as if it were an original party. Ellis is hereby added as a respondent in this proceeding, and is directed to serve and file a responsive pleading within 2 weeks of the date of this decision and order. Discovery in this matter shall then proceed as follows:
(1) Written discovery demands to be served by: September 30, 2011
(2) Responses to written discovery demands to be served by: October 31, 2011
(3) Depositions to be completed by: December 30, 2011
(4) Dispositive motions, if any, to be filed by: January 31, 2012
(5) Compliance conference to be held on: January 10, 2012 at 10:30 a.m.
Lastly, St. Clare’s request for an award of costs and attorneys’ fees, along with any other relief not specifically granted herein, is hereby denied as being unwarranted in light of the above findings.
The parties’ remaining arguments, to the extent not specifically addressed herein, have been considered and found to be unavailing.